Good afternoon. Your Honor, Mary Hodson, Bureau of Assistance States Attorney on behalf of As you both probably know, you have 20 minutes aside. You do not need to take it all, but I would like to ask the appellant if you would like to reserve any part of it for rebuttal. Yes, five minutes in rebuttal. And the clerk will probably, hopefully, stand up when your time is up. I will hopefully notice her and remind you, you will hopefully notice her and finish up. And again, you don't need to take all the time. And again, you both know that this microphone does not amplify. It only records, so please keep your voices up. You may proceed. Good afternoon, Your Honors. May I please have the court? Counsel. Ross Allen from the State Appellate Defender's Office on behalf of Christian Macklin. There is one issue here. The police did not have reasonable suspicion to stop Christian Macklin where he did not meet the general description of either robbery suspect. The Fourth Amendment guarantees that people can be secure in their persons, houses, paper, and effects against unreasonable searches and seizures. The Fourth Amendment is designed to protect on individuals' right to personal security free from arbitrary interference by police officers. The central requirement of the Fourth Amendment is that police act reasonably. Here, the police did not act reasonably where they stopped Macklin without a reasonable suspicion because he did not match the general description of either robbery suspect. Now, are you saying general description or specific description? I mean, generally, it seems like he generally met the description. I'm saying that the description was very general because it described a suspect taller with dark pants, short hairstyle, and a white shirt. And age? Yes, they did describe him as 21 to 25 years old. And so I'm saying he did not meet that very general description because he was wearing a gray shirt and not a white shirt. And therefore, the police did not have a reasonable suspicion to stop him. And because they did not have a reasonable suspicion to stop him, the subsequent illegal search was also illegal. And the proceeds from that search should not have been allowed to be admitted at trial because if the police are unable to stop Macklin, then the subsequent show up is also not permissible. When was the search? Sorry? When was the search when he was initially stopped or after he was identified? The search was immediately after he was stopped. The police officer instituted a frisk for weapons. He did not discover any weapons when he searched Macklin, but instead felt ID cards in his pocket. He then immediately removed those ID cards from Macklin's pockets, which he was not allowed to do. The trial court found that search illegal as the state concedes in their brief. However, they found that because there was a reasonable suspicion to stop Macklin and then the show up was proper, that then the search was essentially cleansed by the inevitable discovery doctor. However, if that initial stop was illegal, then the show up was also impermissible and then the search is never cleansed by the inevitable discovery. But if the initial stop was okay, then you're all right with it? If the court finds that the initial stop was okay, I'm not challenging that search because of the inevitable discovery doctor. Correct. So your problem with the initial stop is that the general description was whatever it was in a white shirt and this individual had a gray shirt. That's correct. So you're saying that you can only stop if you are exactly matching up with the description because generally a gray shirt and a white shirt arguably could be generally in the same spectrum of colors. Not specifically white. So my response to that would be that the complainant and the police officer both viewed the shirts at close quarters. So the idea that it was white or gray, it should have been clear from both perspectives if the shirts was white or gray. Because that description was so minimal, that one piece of difference makes it so that the description is not sufficient for a reasonable suspicion. How does the proximity of the time of the stop in relationship to the report of the robbery and its proximity and distance and direction of flight and the view of the defendant being huffing and puffing and sweating? So the proximity of the crime does support a reasonable suspicion. However, based on that shirt difference, that is a key distinction to show that there is not a reasonable suspicion. Regarding him sweating, it was June 24th, a little bit before noon. I mean, people sweat in the summer. And that key distinction between the shirt is the key that he didn't even meet that very general description. The complainant did not describe specifically his height or at least the description that was given to Officer Malone. He did not receive a specific height. They simply described the pants as dark, simply described as a short hair. So no real specificity aside from white shirt. And that one specific example was not met in this case. And it's really important for our courts to protect people against unreasonable searches and seizures under the Fourth Amendment. It's really important to protect people's right to be free from arbitrary interference by police officers. And if the court does not have any more questions, I would just finish with that the police acted unreasonably by arresting Macklin, even though he did not match the general description, and this court should reverse and remand for a new trial. Thank you. I'll pass that. Thanks. Good afternoon again. May it please the Court, Counsel, Mary Hodgson on behalf of the people of the State of Illinois. When you determine whether somebody has a suspicion to detain somebody for certain deterrent, you look at the totality of the circumstances. And what defense counsel focused on was the description. In the description that went out, Officer Malone testified that he heard the description being a white colored shirt. Officer Farra testified that the description from the dispatch was a white colored shirt. We also must remember our victim is Mr. Martin Vargas. Mr. Vargas was assisted by a Spanish interpreter when he gave the description to the police officer when he went back to the salon and asked the woman to call 911. So it is quite possible that the difference between the white and the light gray was as a result of a mix-up in translation. However, in addition to having the description, we had a male black between the ages of 20 and 25. Was there any record about a mix-up in the translation? I'm not saying there's an inference, but the fact that he was using a translator, that it could be the difference between white and light gray. Well, it's information that the officer who made the stop had. Right. Regardless of the source. Exactly. So mix-up in translation or not, it doesn't matter. It's what was placed in the record. Right. And it was within a very short time frame. At 11-11 is when the dispatch went out. After the dispatch went out, Officer Moreau went to talk to the victim. Officer Funnell was in the area when he observed the defendant. He observed the defendant, someone who matched the description, but he observed him sweating profusely, breathing heavily. Counsel says, well, it was June. Of course, someone's sweating. But sweating profusely, breathing heavily, that's an indication of somebody who's been running away. He was found within two to four blocks of where the incident occurred, within five to ten minutes. After that time, the officer had, at that time, a reasonable, articulate suspicion that this was the person who matched the description and this was a possible offender. The court found that this was a terrorist act, and that finding was not against the manifest weight of the evidence. With regard to the protective pat-down, as we did acknowledge in our brief, this officer exceeded the pat-down when he went and searched the victim's, the defendant's pockets. However, that did not taint the size of the show-up. The show-up was made approximately 20 minutes after the crime occurred. Show-ups are proper identification procedures during investigatory and as an investigatory tool to either dispel or confirm whether the person is the offender. So after Officer Farrar searched the defendant, Officer Malone arrived on the scene and immediately took the defendant to the show-up. So I think counsel has conceded this, and that the only real issue is the reasonableness of the initial stop. And it's our position, Your Honor, that it was reasonable. Reasonable, articulable suspicion based on the totality. Again, the description, the time frame, the location, there was nothing obstructing Mr. Vargas' view of the defendant when he gave the description. And we submit that this was a proper terrorist act, that the trial court was proper. If there are no further questions, we ask that you affirm the trial court's finding and that you also affirm the defendant's conviction and sentence. Thank you, counsel. One thing. I just want to clarify. I did not misstate your position, did I? You did not. Okay. Just one thing briefly. I would just point you to the standard of review. Counsel referred to the mix-up, the potential. Was it white? Was it gray? So the ultimate legal ruling as to suppression is reviewed de novo. But the trial court's finding of historical facts are given great weight and only disturbed if they are against the manifest weight of the evidence. And the trial court specifically found that the description was a white T-shirt and Mr. Macken's T-shirt was a gray T-shirt. And if there's no further questions, I would just ask this court to reverse and remand for a new trial, and I submit this case for decision. Thank you. Thank you very much, both of you. And a decision will be issued forthwith.